1  John A. Shupe, Esq., SBN: 87716
   Eric K. Shiu, Esq., SBN: 156167
2  SHUPE AND FINKELSTEIN
   177 Bovet Road, Suite 600
3  San Mateo, CA 94402
   Telephone: (650) 341-3693
4  Facsimile: (650) 341-1395

5  Attorneys for Defendant WEST VALLEY
   COMMUNITY COLLEGE DISTRICT and individually
6  named employees

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10 CHIN-LI MOU,                        )  Case No: C09-01910 JF
                                       )
11            Plaintiff,               )  **DEFENDANT'S OPPOSITION TO**
                                       )  **PLAINTIFF'S NOTICE OF MOTION**
12     v.                              )  **AND MOTION FOR PRELIMINARY**
                                       )  **INJUNCTION**
13 WEST VALLEY COLLEGE; et. al.        )
                                       )
14            Defendants.              )
                                       )
15                                     )

16                          **INTRODUCTION**

17        Defendants WEST VALLEY MISSION COMMUNITY COLLEGE DISTRICT (hereinafter

18 "College District") and its employees sued herein hereby submit this Opposition to Plaintiff CHIN-LI

19 MOU (hereinafter "Plaintiff")'s Motion for Preliminary Injunction.

20        Plaintiff is a student at West Valley College who was asked to leave the women's restroom for

21 a few minutes so that a janitor could enter and clean it. Plaintiff refused to do so, and thereafter created

22 a disturbance which resulted in her arrest. The College District suspended Plaintiff for her rude,

23 belligerent and disruptive behavior towards its staff. Plaintiff seeks an injunction against the College

24 District so that she can return to class, receive her previously awarded scholarship, and avoid being

25 harassed or threatened by College District officials.

26        For the reasons stated herein, Plaintiff's Motion for a Preliminary Injunction is meritlesss.

27 Accordingly, the College District respectfully requests that this Court deny Plaintiff's Motion in its

28 entirety.

---

**Opposition to Motion for Preliminary Injunction      Case No.  C09-01910 JF**                    Page 1

Dockets.Justia.com

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

<div style="text-align: left; font-weight: bold; writing-mode: vertical;">Shupe and Finkelstein<br>177 Bovet Road, Suite 600<br>San Mateo, CA 94402<br>(650) 341-3693</div>

## STATEMENT OF FACTS

### 1.   <u>Bathroom Encounter on April 8, 2009</u>

On several occasions, beginning on or about March 2009, Andelino Fernandes, a custodian, came to the West Valley College Career Center asking for help to check if any students were still inside the women's restroom nearest the Career Center.  Mr. Fernandes needed to clean the restroom and was having trouble with one student (Chin-Li Mou) not leaving. Dr. Fred Prochaska, Dean of Career Education and Workforce Development, asked his assistant, Cathy Aimonetti, to help the custodian. (Declaration of Cathy Aimonetti, at ¶3, attached as Exhibit E; Declaration of Fred Prochaska, at ¶3, attached as Exhibit F.)

On April 8, 2009, Ms. Aimonetti noticed Mr. Fernandes standing outside the door of the same restroom, waiting for everyone to come out so that he could clean it. (Aimonetti, at ¶3.) At Mr. Fernandes' request, Ms. Aimonetti checked to see if the restroom was empty. (*Id.*) There were three students using the restroom. (*Id.*) Ms. Aimonetti told them that the custodian was outside waiting to clean the restroom. (*Id.*) Two students left quickly, but one person remained in the handicap stall. (*Id.*) This person turned out to be Plaintiff. (*Id.*)  When she came out, Ms. Aimonetti explained again that the custodian was waiting to clean the restroom. (*Id.*) She responded by saying, "So?" (*Id.*) Ms. Aimonetti explained that the custodian needed only a few minutes to clean the restroom and that Plaintiff could come back when he was done. (*Id.*) Plaintiff yelled, "So?" and refused to leave. (*Id.*) Ms. Aimonetti told the custodian what happened and left to go back to her office to ask Dean Prochaska what she ought to do. (*Id.*) When she got back to Dean Prochaska's office, Ms. Aimonetti could hear Plaintiff yelling at Mr. Fernandes in the corridor. (*Id.*) Ms.Aimonetti approached Plaintiff and asked her if she would like to speak with the Dean. (*Id.*) Plaintiff yelled obscenities and walked off. (*Id.*)

### 2.   <u>Confrontation at Career Center on April 9, 2009</u>

The next day, on April 9, 2009, at about 2:00 p.m., Plaintiff came to Ms. Aimonetti's office and confronted her about the restroom incident the day before. (Aimonetti Decl., at ¶5; Prochaska Decl. at ¶4.) Plaintiff acted very rude, saying things like, "What are you, the bathroom police?", "I'm an Asian American, you have a problem with that?", "I can take as long as I want, I went to the custodian's boss, he said okay." "I need to take my medication and drink water slowly." (Aimonetti Decl., at ¶5.) Plaintiff

1    became belligerent and started yelling at Ms. Aimonetti. (*Id.*) Dean Prochaska was in the office next

2    door and heard everything taking place. (Prochaska Decl., at ¶4.) Ms. Aimonetti asked Plaintiff if she

3    wanted to speak with the Dean. Plaintiff refused to speak with the Dean, but also would not leave.

4    (Aimonetti, at ¶5.) She kept repeating the same things loudly, and became very disruptive to students

5    and office personnel. (*Id.*) Eventually, Ms. Aimonetti turned the conversation over to Dean Prochaska

6    as he could see and hear Plaintiff. Plaintiff was standing in the doorway between Dean Prochaska's and

7    Ms. Aimonetti's offices. (*Id.*)   In an effort to appease Plaintiff, Dean Prochaska explained that there

8    were other restrooms in the building and that Plaintiff could use those other restrooms when hers was

9    being cleaned. (Prochaska Decl., at ¶4.) He also stated that she could drink her water outside of the

10   restroom and that there were benches in the immediate area. Plaintiff continued talking loudly but

11   eventually left and walked away. (*Id.*)

12        At around 2:20 p.m., Plaintiff returned to Ms. Aimonetti's office and continued talking very

13   loudly about the same things as before. (Aimonetti Decl., at ¶6.)   One of the employees in Ms.

14   Aimonetti's office, Rebecca McConnell, called the police because Plaintiff was disrupting the office.

15   (*Id.*) However, Plaintiff left Ms. Aimonetti's office before the Police arrived. (*Id.*) The Police went

16   looking for Plaintiff in the restroom but could not find her there. (*Id.*) Ms. Aimonetti and Ms. McConnell

17   explained to the Police that Plaintiff usually could be found in the restroom between 4:15 p.m. and 4:30

18   p.m. when the custodian needed to clean it. (*Id.*) The Police advised that they would return at that time

19   to observe how Plaintiff responded to the custodian. (*Id.*)

20        At about 2:45 p.m., Ms. Aimonetti went across the corridor to collect her mail from the Applied

21   Arts and Science Division Office. Plaintiff approached Ms. Aimonetti and threatened her, saying "*You*

22   *better watch out, I'm watching you and I'll get you.*" Ms. Aimonetti reported this encounter to Cass

23   Owen, Dean Prochaska and Rebecca McConnell. (Aimonetti Decl., at ¶7.)

24        At about 4:15 p.m., Ms. Aimonetti opened the side door of the Career Programs office to keep

25   an eye out for the custodian to let him know that Plaintiff was particularly upset today. Almost

26   immediately after Ms. Aimonetti opened the door, Plaintiff yelled from the doorway "You stalking me,

27   *you crazy bitch?*" (Aimonetti Decl. at ¶8.) Rebecca McConnell overheard Plaintiff and called the Police

28   because Plaintiff was being disruptive again. (*Id.*)

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

### 3.   **Police Respond to Disturbance**

At about 4:25 p.m. Officer Marcus Lindberg responded to the Applied Arts and Science Building at West Valley College on account of a report of a disruptive student – Plaintiff. (Declaration of Marcus Lindberg at ¶3, attached as Exhibit G.) Officer Lindberg was advised that Mr. Fernandes had had several prior encounters with Plaintiff over the past few weeks. (*Id.*) Mr. Fernandes explained that it was quite common for Plaintiff to refuse to leave the restroom when asked to do so and that he has had to ask Ms. Aimonetti for help so that he could complete his custodial duties. (*Id.*)

Mr. Fernandes escorted Officer Lindberg to the women's restroom next to the Career Center and explained that Plaintiff was inside. (Lindberg Decl., at ¶4.) Officer Lindberg knocked on the door, announced his presence and asked if Plaintiff was inside. (*Id.*) A female voice was heard, saying, "Ya, I'm pooping." (*Id.*) Officer Lindberg told Plaintiff to finish her business because it was time to leave. (*Id.*) He waited about 3 or 4 minutes by the door for Plaintiff to finish. (*Id.*) Next, he heard someone open a locker inside the restroom. (*Id.*) Officer Lindberg asked Plaintiff several more times to come out, but she remained inside. (*Id.*) Accordingly, Officer Lindberg walked in and found Plaintiff standing next to Locker No. 50. (*Id.*) Plaintiff appeared disheveled and emotionally distressed. (*Id.*) She waived her arms in the air and repeatedly told Officer Lindberg, "I don't have to go, you stupid." (*Id.*)

Over the course of the next 3 or 4 minutes, Officer Lindberg told Plaintiff several more times that she had to leave campus because of her behavior during the earlier part of the day. (*Id.*) Plaintiff became more animated and angry each time she was told why she had to leave. (*Id.*) At one point, Plaintiff walked up to Office Lindberg, stood about 12 to 16 inches away, pointed her finger at his face and said, "No, I don't have to leave, you stupid!" (*Id.*) Again, Officer Lindberg told Plaintiff that she had to leave but she remained in the restroom. (*Id.*) Because Plaintiff refused repeated requests to leave, Officer Lindberg tried to escort her out of the restroom. (*Id.* at ¶5.) Without warning, Plaintiff struck Officer Lindberg in the right forearm. (*Id.*) Officer Lindberg then turned Plaintiff around and tried to control her arms and told her she was under arrest and to stop resisting. (*Id.*) Plaintiff kept yelling and swinging her arms around making it difficult for Officer Lindberg to control her. (*Id.*) Officer Lindberg grabbed Plaintiff's arm and tried to pull her out of the restroom. (*Id.*)

A short while later, Officer Kamfirouzi responded to the scene. (Lindberg Decl., at ¶7.) Officer

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

1  Kamfirouzi helped Officer Lindberg handcuff Plaintiff. (*Id.*) Thereafter, Officer Lindberg escorted

2  Plaintiff to his patrol car, completed a Notice of Withdrawal of Consent prohibiting Plaintiff from

3  entering West Valley and Mission College for 14 days, and drove her to the Santa Clara Main Jail. (*Id.*)

4  At the Main Jail, Officer Lindberg tried to give Plaintiff the Notice of Withdrawal of Consent.

5  (Lindberg Decl., at ¶9.) Because Plaintiff refused to sign the Notice, Officer Lindberg placed a copy of

6  the Notice in Plaintiff's property bag. (*Id.*) He advised Plaintiff that she was not permitted to come onto

7  the West Valley or Mission College campus without an appointment. (*Id.*) If she did so, she would be

8  arrested for trespassing. (*Id.*) Plaintiff was booked into the Santa Clara County Main Jail. (*Id.*)

9  **4. Plaintiff Is Suspended**

10  On April 14, 2009, Plaintiff met with V.P. Smith to discuss the April 9, 2009 incident.

11  (Declaration of Ernest Smith, at ¶8, attached as Exhibit J.) In this meeting, Plaintiff recounted what

12  happened from her perspective. V.P. Smith explained to Plaintiff that if College staff requested her to

13  leave the restroom, she should try to come out as quickly as possible. (*Id.*) Following the meeting, V.P.

14  Smith decided that Plaintiff could remain on campus only to attend class and for no other purpose. (*Id.*)

15  He explained that he needed time to review Plaintiff's statements of what happened, the numerous

16  complaints he had received about the April 9, 2009 incident and others leading up to the situation and

17  scheduled a follow up meeting on April 22, 2009. (*Id.*)

18  Meanwhile, V.P. Smith received a number of complaints from West Valley College staff about

19  Plaintiff approaching them to speak about the April 9, 2009 incident. V.P. Smith explained to these staff

20  members that they were under no obligation to speak with Plaintiff and that they could refer her to V.P.

21  Smith if they did not feel comfortable speaking with Plaintiff. (Smith Decl., at ¶9.)

22  At their April 22, 2009 meeting, V.P. Smith explained to Plaintiff that complaints had been made

23  by a large number of people from Career Programs Office, Dean of Career Education and Workforce

24  Development, the library, the Educational Transition Program, custodial staff, and Health Services.

25  (Smith Decl., at ¶10.) He explained that because Plaintiff's conduct on April 9, 2009, constituted a

26  violation of Student Code of Conduct, Section 5.19.2, A, B, C and P, and of Education Code section

27  87708(A) and (B), she was being placed on disciplinary suspension effective immediately. (*Id.*) Plaintiff

28  asked to complete the semester because she hoped to transfer to another college. (*Id.*) However, because

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

her behavior had become threatening to others, V.P. Smith denied Plaintiff's request. (*Id.*) V.P. Smith confirmed his decision in a letter on April 27, 2009. (*Id.* at ¶11.) V.P. Smith explained to Plaintiff that she was being dropped from all her classes, that her Norma Crawford scholarship would be rescinded, and that her suspension would last until January 2010. (*Id.*) V.P. Smith also explained that Plaintiff had the right to appeal this decision to the Student Disciplinary Hearing Board. (*Id.*, at ¶12.)

### 5.   Plaintiff Appeals to Student Disciplinary Hearing Board

On May 6, 2009, Plaintiff requested an appeal of her suspension to the Student Disciplinary Hearing Board. (Smith Decl., at ¶13.) All committee members were quickly assembled and Plaintiff was advised on May 13, 2009, that her appeal would be heard the next day on May 14, 2009. (*Id.*, at ¶14.) Because Plaintiff had a conflicting medical appointment, her appeal had to be rescheduled. (*Id.*) However, Plaintiff indicated that it was her belief that it was too late for any hearing because she had been dropped from all her classes. (*Id.*, at ¶15.)

On May 21, 2009, Plaintiff was advised that her appeal was rescheduled for June 2, 2009. (Smith Decl., at ¶16.) Plaintiff responded by stating, "Let court decided if WVC's appeal process is proper or not." (*Id.*) V.P. Smith's office tried clarify Plaintiff's statement, but was ignored. (*Id.*)

The Student Disciplinary Hearing Board convened on June 2, 2009, to consider Plaintiff's appeal. (Smith Decl., at ¶17.) Plaintiff did not personally appear at this hearing. (*Id.*) The Hearing Board considered all the information provided by Plaintiff and others, and determined that V.P. Smith properly suspended Plaintiff for the remainder of Spring Semester 2009 and Fall Semester 2009. (*Id.*) A notice of this decision was issued on June 11, 2009. (*Id.*)

### 6.   Plaintiff Lodges Complaint Against Dean Prochaska

Meanwhile, on April 14, 2009, Plaintiff left a voicemail message with David Fishbaugh, the Dean of Instruction at West Valley College, stating that she wished to complain about Dean Prochaska. (Declaration of David Fishbaugh at ¶4, attached as Exhibit R.) Plaintiff was advised that she needed to submit a signed written statement, setting forth her concerns with Dean Prochaska. (*Id.*)

Plaintiff complained that on April 8 and April 9, Dean Prochaska conspired with his staff and police to harass her for using the bathroom, thereby violating her due process, equal protection, First Amendment, Fourth Amendment and Eighth Amendment rights. (Fishbaugh at ¶9.)

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

Dean Fishbaugh investigated these allegations and sent Plaintiff his findings on May 6, 2009. (Fishbaugh at ¶11.) Dean Fishbaugh concluded that Dean Prochaska had not conspired with his staff or the police to harass Plaintiff, and that Dean Prochaska had not violated Plaintiff's rights. (*Id.*) Plaintiff was advised that if she did not agree with Dean Fishbaugh's decision, she could appeal to President Philip Hartley. Plaintiff did not appeal Dean Fishbaugh's decision. (Declaration of Philip Hartley, at ¶5, attached as Exhibit X.)

### 7.   **Plaintiff Is a Vexatious Litigant**

Plaintiff has a habit of disruptive behavior and consistently believes that others are harassing her. Over the past two years, Plaintiff has filed two other lawsuits against the California State University and the City of San Jose, alleging violations of her civil rights. (See Declaration of Eric Shiu, at ¶¶4, 5, attached as Exhibit A.) She also was the subject of a civil harassment action brought by Lola Robles. (Shiu Decl., at ¶6.) In this current lawsuit, Plaintiff has named a number of individuals who have no involvement with the April 9, 2009 incident, including Dalton C. Rolen, Laura Lorman, Philip Hartley and John Hendrickson. (Declaration of Dalton C. Rolen, at ¶3, attached as Exhibit Z; Declaration of Laura Lorman at ¶3, attached as Exhibit AA; Declaration of Philip Hartley at ¶6, attached as Exhibit X; Declaration of John Hendrickson at ¶3, attached as Exhibit BB.)

### LEGAL ARGUMENT

A preliminary injunction is a provisional remedy issued prior to final disposition of the litigation. Its function is to preserve the status quo and to prevent irreparable loss of rights prior to judgment. (*Sierra On-Line, Inc. v. Phoenix Software, Inc.* (9th Cir., 1984) 739 F.2d 1415, 1422.) A preliminary injunction is a ***drastic and extraordinary*** remedy that is not to be routinely granted. (*Intel Corp. v. ULSI Systems Technology, Inc.* (Fed. Cir., 1993) 995 F.2d 1566, 1568.) The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. (*Weinberger v. Romero-Barcelo* (1982) 456 U.S. 305, 312.)

An injunction never issues as a matter of course. A court must balance the competing claims of injury and consider the effect on each party of granting or withholding the requested relief. Although particular regard should be given to the public interest, a federal judge is not mechanically obligated to grant an injunction for every violation. (*Amoco Production Co. v. Village of Gambell, Alaska* (1987)

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

1 | 480 U.S. 531.)  A plaintiff seeking a preliminary injunction must establish: (a) a likelihood of success

2 | on the merits; (b) a likelihood of irreparable harm in the absence of a preliminary injunction; (c) the

3 | balance of equities tips in favor of granting the preliminary injunction; and (d) an injunction is in the

4 | public interest. (*Amoco*, supra, at 542.)

### 1.     Plaintiff Is Not Likely to Prevail on the Merits of Her Claim

6 | To obtain a preliminary injunction, Plaintiff must show that she is "likely" to prevail on the

7 | merits. (*Ashcroft v. ACLU* (2004) 542 U.S. 656, 665.)  This means that Plaintiff must demonstrate a

8 | likelihood of prevailing on any affirmative defense as well as on Plaintiff's case in chief. (*National Steel*

9 | *Car, Ltd. v. Canadian Pac. Ry.* (Fed. Cir., 2004) 357 F.3d 1319, 1325; see also *A&M Records, Inc., v.*

10 | *Napster, Inc.* (9th Cir. 2001) 239 F.3d 1004, 1015, fn 3.)  A likelihood of success requires a balancing

11 | of interests: the greater the risk of injury to the defendant if the injunction is granted, the stronger a

12 | showing a plaintiff will need to make on the merits. (See *Steakhouse, Inc. v. City of Raleigh, N.C.* (4th

13 | Cir. 1999) 166 F.3d 634, 637.)  Conversely, if a moving party raises a substantial question and the

14 | equities are otherwise strongly in his or her favor, the showing of success on the merits can be less.

15 | (*Dataphase Systems, Inc. v. C.L. Systems, Inc.* (8th Cir., 1981) 640 F.2d 109, 113.)

16 | Here, Plaintiff appears to assert that she was (a) "expelled" without due process (Motion at 2,

17 | lines 14-15); (b) told not to discuss the April 9, 2009 incident with other College staff, which allegedly

18 | violates her rights under the First Amendment (Motion, at lines 19-22); (c) told not to use the restroom

19 | for more than two minutes (Motion, at 4, lines 1-2); and (d) prohibited from filing a report of racial

20 | discrimination against unnamed staff members because she was not permitted to enter West Valley

21 | College (Motion, at 5, lines 307).  It is not clear from Plaintiff's Motion what theories have been asserted

22 | for purposes of her request for a preliminary injunction, and her motion is not supported by an affidavit

23 | signed under oath setting forth the facts supporting her request.  In any case, Plaintiff alleges violations

24 | of due process, equal protection, and First Amendment rights, 42 U.S.C. § 1983, 1985, 1986, Civil Code

25 | section 51 and Penal Code section 422.6.  The College District will address these below.

### (A)     No Deprivation of Federally Protected Right under Color of State Law

27 | Plaintiff alleges violations of her rights under the Due Process Clause, the Equal Protection

28 | Clause and under the First Amendment.  Defendant interprets these alleged violations to be the basis

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

1  upon which Plaintiff asserts a cause of action under 42 U.S.C. § 1983. There are two essential elements

2  to a Section 1983 action: first, that the defendant acted under "color of law"; and, second, that the

3  defendant's conduct deprived the plaintiff of a federally protected right. (*Haygood v. Younger*, 769 F.2d

4  1350, 1353 (9th Cir.1985).) As demonstrated below, Plaintiff cannot show that she has been deprived

5  of a federally protected right and therefore is not likely to prevail on her claim under Section 1983.

6       **(i)    Plaintiff Was Not Expelled Without Due Process**. As an initial matter, Plaintiff was

7  not expelled from West Valley College. She was only suspended until January 2010. (Smith Decl., at

8  ¶11.)   Nonetheless, Plaintiff's allegation that she was disciplined without due process is meritless

9  because she was given the opportunity to present her side of the story before she was suspended and the

10  opportunity to challenge her suspension.

11       A Section 1983 claim based upon procedural due process has three elements: (1) a liberty or

12  property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3)

13  lack of process. (See *Portman v. County of Santa Clara* (9th Cir. 1993) 995 F.2d 898, 904.) A student

14  facing suspension is entitled to procedural due process. (See *Goss v. Lopez* (1975) 419 U.S. 565, 95 S.Ct.

15  729, 42 L.Ed.2d 725.) Students facing suspension from school must be given notice and afforded some

16  kind of hearing before any punishment is invoked. (See *James P. v. Lemahieu* (2000) 84 F.Supp.2d

17  1113, 1119; *Coplin v. Conejo Valley Unified School Dist.* (1998) 903 F.Supp 1377, 1387 [due process

18  requires that a suspended student be informed of charges, presented with evidence and given an

19  opportunity to tell his side of the story].) A formal hearing is not required so long as a student is allowed

20  the opportunity to characterize his or her conduct in what s/he believes is the proper context. (*See Board

21  of Curators v. Horowitz*, 435 U.S. 78, 84-85 (1978); *Goss v. Lopez*, 419 U.S. 565, 581 (1975).)

22       Plaintiff was provided all the due process that is required.  She was given the opportunity to

23  characterize her conduct in what she believes is the proper context. Plaintiff personally met with V.P.

24  Smith on April 14, 2009, to tell her side of the story. (Smith Decl., at ¶8.)  V.P. Smith considered

25  Plaintiff's explanation.  He also considered the complaints that he had received about Plaintiff.  As set

26  forth above, Plaintiff was rude and belligerent in front of college staff; she threatened one staff member

27  and was generally loud and disruptive to the Career Center office. (Aimonetti Decl., at ¶¶ 3-8; Prochaska

28  Decl., at ¶¶ 4-5.) Plaintiff also resisted a police officer's instructions to leave a restroom and was cited

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

1   under Penal Code section 626.4, which allows the college to withdraw permission for any person to

2   remain on campus for up to 14 days when there is reasonable cause to believe that such person has

3   willfully disrupted the orderly operation of the campus. (Lindberg Decl., at ¶¶ 4-6, 9; Pen. Code §

4   626.4.) Eventually, V.P. Smith decided to suspend Plaintiff through January 2010 for her rude,

5   belligerent and disruptive behavior. (*Id.* at ¶10.) Notice of Plaintiff's suspension was sent on April 27,

6   2009, which advised that the suspension could be appealed to the Student Disciplinary Hearing Board.

7   (*Id.*, at ¶ 11.) Plaintiff did so. (*Id.* at ¶13.) The College District twice tried to arrange a hearing for

8   Plaintiff's appeal. (*Id.* at ¶¶ 14-16.) Eventually, the hearing was conducted on June 2, 2009. (*Id.* at ¶¶

9   16-17.) Plaintiff chose not to appear at the hearing. (*Id.* at ¶ 17.) The College District followed its

10  procedures to review student grievances and determined that V.P. Smith's suspension was appropriate.

11  (*Id.*) Because Plaintiff had the opportunity to explain herself before any disciplinary decision was made,

12  and was given a fair opportunity to challenge the suspension, she has not been disciplined without due

13  process.

14      **(ii)     No Violation of Equal Protection.** Plaintiff further asserts that her rights to equal

15  protection were violated because she was the only person prohibited from using the women's restroom

16  for more than two minutes. (Motion, at 4, lines 13-17.) She alleges that V.P. Smith's threat to cut her

17  use of the restroom "short" is arbitrary, capricious and inhuman. (Motion, at 4, lines 7-11.) Plaintiff's

18  allegation is meritless because everyone as a matter of courtesy and common sense is asked to leave a

19  restroom whenever a janitor needs to clean the restroom.

20      To succeed on a Section 1983 equal protection claim, a plaintiff must prove that the defendant

21  acted in a discriminatory manner and that the discrimination was intentional. (*See Reese v. Jefferson

22  School Dist. No. 14J* (9th Cir., 2000) 208 F.3d 736, 740, citing *Federal Deposit Ins. Corp. v. Henderson,*

23  940 F.2d 465, 471 (9th Cir.1991).)

24      Here, Plaintiff cannot show that West Valley College acted in a discriminatory manner or that

25  the discrimination was intentional. The evidence shows that any action by the College District was taken

26  solely because Plaintiff was disruptive and hostile towards College staff and not for any discriminatory

27  reason. (Aimonetti, at ¶¶ 3-8, 9; Prochaska, at ¶¶ 4-7, 9; Smith Decl., at ¶¶ 11, 18; Lindberg Decl., at

28  ¶¶ 8, 11.) The college has a legitimate need to maintain a restroom in a clean and sanitary condition for

1  faculty, staff and students. All persons are asked to leave the women's restroom when a janitor needs

2  to clean it. (See Aimonetti Decl., at ¶ 3 [all individuals using the restroom were asked to leave, but only

3  Plaintiff refused to do so]; *Jensen v. Reeves* (1999) 45 F.Supp.2d 1265 [suspension of elementary school

4  student for misconduct did not violate equal protection absent showing that similarly situated students

5  had been treated differently].)  Even if Plaintiff was expressly asked to leave, there would be no equal

6  protection violation because she was known to use the restroom facilities for extended periods of time

7  even when the janitor was waiting to clean it.  (See, e.g., *Craig v. Selma City School Board* (1992) 801

8  F.Supp 585 [close monitoring of students who had been involved in series of fights was legitimate and

9  strict conduct probation was rationally related to achieving legitimate objective].)

10      **(iii)      No Violation of First Amendment**.  Plaintiff alleges that her First Amendment Rights

11  have been violated, but does not state specifically the facts that give rise to any violation of that right.

12      To establish a First Amendment retaliation claim, an ordinary citizen must show that (a) he was

13  engaged in a constitutionally protected activity; (b) the defendant's actions caused him to suffer an injury

14  that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the

15  defendant's adverse actions were substantially motivated against the plaintiff's constitutionally protected

16  conduct. (See *Mendocino Envtl. Ctr. v. Mendocino County* (9th Cir.1999) 192 F.3d 1283, 1300-01; *see*

17  *also Lashley v. Wakefield* (2007) 483 F.Supp.2d 297, 300.)  The First Amendment, however, will not

18  prevent school officials from disciplining students who materially disrupt the educational process. (See

19  *Lovell By and Through Lovell v. Poway Unified School Dist.* (9th Cir. 1996) 90 F.3d 367, 371.)

20      **(1)      Plaintiff Not Prevented From Discussing the April 8, 2009 Incident**. Here, Plaintiff

21  asserts that she and other staff at West Valley College were prevented by V.P Smith from speaking about

22  the April 9, 2009 incident. (Motion, at 2, lines 18-22.) V.P. Smith did no such thing.  Plaintiff received

23  a 14-day Withdrawal of Consent and was prohibited from entering the college campus because of her

24  rude, belligerent and disruptive behavior on April 9, 2009. (Withdrawal of Consent, attached as Exhibit

25  I.) V.P. Smith modified the terms of this prohibition so that Plaintiff could continue attending her classes

26  while he considered what action to take. (Smith Decl., at ¶8.)  However, V.P. Smith received a number

27  of complaints about Plaintiff approaching staff to discuss the April 9, 2009 incident. V.P. Smith

28  explained to these staff members that they were under no obligation to speak with Plaintiff and that they

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

1  could refer Plaintiff to V.P. Smith if they did not feel comfortable speaking with her directly. (*Id.* at ¶9.)

2  Under these circumstances, there has been no violation of Plaintiff's First Amendment Rights at all.

3          (2)    **Plaintiff Was Not Prevented from Filing a Report of Racial Discrimination**. Plaintiff

4  also appears to allege that her exclusion from the West Valley College campus violated her First

5  Amendment Rights because it prevented her from filing a report of racial discrimination. (Motion, at 5,

6  lines 3-7.) This allegation is meritless. As set forth above, Plaintiff appealed her suspension to the

7  Student Disciplinary Hearing Board (Smith Decl., at ¶13) and submitted a complaint against Dean

8  Prochaska (Fishbaugh Decl., at ¶9). Plaintiff's filing of these two grievances greatly undermines her

9  claim that she was preventing from filing a report of racial discrimination. Since Plaintiff clearly was

10  able to file complaints with West Valley College, her allegation that her First Amendment rights have

11  been violated is meritless.

12         **(B)**    **No Conspiracy to Violate Plaintiff's Civil Rights**. Although unclear from the Motion,

13  Plaintiff appears to state that there was a conspiracy in violation of 42 U.S.C. § 1985(3) to prevent her

14  from staying in the women's restroom for more than two minutes, thereby violating her civil rights.

15  (Motion, at 4, line 18.) No College District employee conspired to violate Plaintiff's civil rights.

16          The elements of a Section 1985(3) claim are: (1) the existence of a conspiracy to deprive the

17  plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting

18  injury. (*Scott v. Ross* (9th Cir.1998) 140 F.3d 1275, 1284.) A conspiracy must be motivated by some

19  racial or other class-based, invidious discriminatory animus. (See *Mustafa v. Clark County Sch. Dist.*

20  (9th Cir.1998) 157 F.3d 1169, 1181 [evidence of discriminatory animus is needed for conspiracy claim

21  under Section 1985].).

22          Here, Plaintiff has not put forward any evidence of a conspiracy to deprive her of a constitutional

23  right. Plaintiff has no constitutional right to be in a restroom at the expense of a janitor whose job is to

24  clean the restroom. All students are required to comply with the requests of college staff who need to

25  perform their duties. (See Code of Student Conduct § 5.19.2(P) [students are required to comply with

26  verbal directions of college staff or police who are acting in the performance of their duties], attached

27  as part of Exhibit M.) As a matter of common sense and courtesy, everyone is expected to leave a

28  restroom so that a janitor can clean it. The mere fact that the police was called to respond to Plaintiff's

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

1    disruptive behavior is no evidence of a conspiracy because making a police report does not form a

2    conspiracy. (See, e.g., *McKenzie v. Lamb* (9th Cir. 1984) 738 F.2d 1005 [individuals who did no more

3    than inform police of suspected criminal activity, and who played no part in arrests and seizures, could

4    not be held liable for participation in alleged conspiracy].) Also, Plaintiff has not produce any evidence

5    of a conspiracy motivated by a discriminatory animus. Any discriminatory motive is denied.

6         (C)    **No Negligence to Prevent Conspiracy to Violate Civil Rights**.

7         Plaintiff also appears to assert a claim under 42 U.S.C. § 1986, which provides a cause of action

8    against parties who fail to prevent conspiracies to violate the civil rights of other people. Specifically,

9    any person who knows of a conspiracy to violate civil rights, and who has the power to prevent the rights

10   violation but refuses or neglects to do so, is liable to the person injured. (See *Delta Savings Bank v.*

11   *United States of America* (9th Cir. 2001) 265 F.3d 1017, 1025; 42 U.S.C. § 1986.) To state a cause of

12   action under 42 U.S.C. § 1986, a plaintiff must also state a cause of action under 42 U.S.C. § 1985. (See

13   *Trerice v. Pedersen* (9th Cir., 1985) 769 F.2d 1398, 1043.) Here, Plaintiff offers no evidence that there

14   was a conspiracy to deprive her of any civil right because of her ethnicity, race or other protected

15   classification. As such, there cannot be any negligence to prevent the alleged conspiracy.

16        (D)    **No Violation of the Bane Act**.

17        Plaintiff appears to allege a right under the Bane Act (Civil Code section 51.7) to use the

18   women's restroom free from violence or threat of violence on account of her race or ethnicity. (Motion,

19   at 4, lines 13-19.) Civil Code section 51.7 provides that all persons have the right to be free from

20   violence or threat of violence because of, among other things, their race. (Civ. Code § 51.7)

21        Here, Plaintiff's Section 51.7 claim fails because she cannot show that any action was taken

22   against her on account of her race or ethnicity. As demonstrated by the Declaration of Officer Lindberg,

23   Ms. Plaintiff was asked repeatedly to leave the restroom because a janitor was waiting to clean the

24   restroom and she was eventually arrested because she struck the arresting police officer in the arm.

25   (Lindberg Decl., at ¶ 5.) Plaintiff presents no evidence whatsoever that she suffered violence or a threat

26   of violence because of her ethnicity or race or other protected classification.

27        Plaintiff's claim under Civil Code section 52.1 is equally meritless. Civil Code section 52.1

28   provides that an injunction may be sought if any person interferes with the exercise of Constitutional

1  rights. (Civ. Code § 52.1, emphasis added.)  Here, Plaintiff's Section 52.1 claim fails because she has

2  no constitutional right to use the women's restroom for as long as she chooses in defiance of a janitor's

3  reasonable request to clean the restroom for the benefit of all faculty, staff and students.

4       **(E)**    **No Standing to Assert Hate Crime in Violation of Penal Code § 422.6**

5       Plaintiff asserts a violation of Penal Code section 422.6(a), which generally provides that no

6  person shall by force or threat of force deny someone any right or privilege secured by the laws of the

7  United States and of the State of California because of his or her race, religion, ancestry, national origin

8  or sexual orientation. (Penal Code § 422.6)  Plaintiff offers no support for the proposition that Penal

9  Code section 422.6 creates a private right of action for injunctive relief or facts showing that her

10  constitutional rights have been violated by force or threat of force because of her race or ethnicity.

11       **(F)**    **Equities Do Not Favor Issuance of an Injunction**

12       As set forth above, a preliminary injunction is a ***drastic and extraordinary*** remedy that is not to

13  be routinely granted. (*Intel Corp. v. ULSI Systems Technology, Inc.* (Fed. Cir., 1993) 995 F.2d 1566,

14  1568.)  A court must balance the competing claims of injury and consider the effect on each party of the

15  granting or withholding of the requested relief.  Although particular regard should be given to the public

16  interest, a federal judge is not mechanically obligated to grant an injunction for every violation. (*Amoco*

17  *Production Co. v. Village of Gambell, Alaska* (1987) 480 U.S. 531, 542.)

18       Here, the equities weigh strongly against issuance of a preliminary injunction.  The College

19  District has a strong and legitimate interest in maintaining a clean and safe environment for its faculty,

20  staff and students.  Plaintiff has no constitutional right use the women's restroom whenever and for

21  however long she chooses when a janitor reasonably requests to clean the restroom.  Plaintiff has no

22  right to disrupt the operations of West Valley College and to threaten college staff and otherwise treat

23  them in a rude, belligerent and disruptive manner.

24       **2.**    **Plaintiff Cannot Demonstrate Irreparable Injury**

25       Plaintiff must also demonstrate that irreparable injury is likely in the absence of an injunction.

26  (*Winter v. Natural Resources Defense Council, Inc.* (2008) 129 S.Ct. 365, 172 L.Ed.2d 249, 77 USLW

27  4001.)  A preliminary injunction may not be granted based on a possibility of irreparable harm, even if

28  plaintiff demonstrates a strong likelihood of prevailing on the merits.  This is because injunctive relief

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693

is an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief. (*Winter*, supra, at 129 S.Ct. at 367.) Plaintiff must demonstrate immediate threatened harm. (*Caribbean Marine Services Co., Inc. v. Baldridge* (9th Cir. 1988) 844 F.2d 668, 674.) Plaintiff must also demonstrate potential harm which cannot be redressed by a legal or equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from such harm. (*Campbell Soup Co. v. ConAgra, Inc.* (3rd Cir. 1992) 977 F.2d 86, 91.) Significantly, temporary deprivation of employment, even when combined with likely financial distress and difficulty finding a new job, is not an irreparable injury and therefore will not support a preliminary injunction ordering plaintiff reinstated. Plaintiff's loss of income can be redressed in damages. (*Shegog v. Board of Ed. of City of Chicago* (7th Cir. 1999) 194 F.3d 836, 339.) ***If a harm is self-inflicted, it does not qualify as irreparable.*** (*Caplan v. Fellheimer Eichen Braverman & Kaskey* (3rd Cir. 1995) 68 F.3d 828, 839.) Plaintiff's psychological distress usually does not constitute irreparable injury warranting injunctive relief. (*DeNovellis v. Shalala* (1st Cir. 1998) 135 F.3d 58, 63-64.)

Plaintiff's assertion that she has been irreparably injured is meritless because her alleged injury is "self-inflicted." Plaintiff has no constitutional right to use the women's restroom at the expense of a janitor waiting to clean the restroom. She was asked repeatedly to leave the restroom but would not do so. As a matter of common sense and courtesy, everyone is expected to leave to a restroom when a janitor needs to clean it. The College has a legitimate and reasonable need to maintain its restrooms in a clean, orderly and sanitary condition. Creating a disturbance and threatening College staff over a reasonable and legitimate request to clean the restroom is not protected conduct. Any alleged injury resulting therefrom, is wholly self-inflicted. Plaintiff's request for a preliminary injunction must fail.

## CONCLUSION

For the reasons stated above, the College District respectfully requests that this Court deny Plaintiff's Motion in its entirety.

Dated: June 24, 2009

Respectfully submitted by,

SHUPE AND FINKELSTEIN

By

Eric K. Shiu, Attorneys for Defendant

Shupe and Finkelstein
177 Bovet Road, Suite 600
San Mateo, CA 94402
(650) 341-3693